OPINION *Page 2 
{¶ 1} Defendant-appellant Hallie Tilmant nka Hallie Logan appeals from the March 10, 2006 Confirmation of Sale issued by the Knox County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Hallie Tilmant nka Hallie Logan and appellee Joel Tilmant were married in December of 1997. One child was born as issue of such marriage.
 {¶ 3} On September 20, 2001, appellee filed a complaint for divorce against appellant in the Knox County Court of Common Pleas, Domestic Relations Division. A trial before the court was held.
 {¶ 4} On August 23, 2004, the trial court issued Findings of Fact. The trial court, in its findings, found, in part, that it could not determine the fair market value of the marital residence on Fox Chase Drive because all the expert appraisals differed. Accordingly, the trial court found that "the best method to determine the value of the residence is to order it sold." The trial court also found that, prior to the parties' marriage, appellee had paid $37,000 in cash and credits for the land upon which the marital residence was constructed. The trial court, which had heard testimony that the present value of the land would be $45,000 if it were vacant at the time of the divorce, determined that appellee had a separate property interest in the amount of $45,000.
 {¶ 5} The trial court, based on testimony that, during the construction of the marital residence appellant had performed 95% of the general contracting duties, valued appellant's services as a general contractor at $35,055. The court then found "it appropriate to offset this contribution against husband's pre-marital separate property *Page 3 
interest of $45,000. The husband's separate pre-marital interest in the Fox Chase property is reduced to $9,945".
 {¶ 6} Pursuant to a Journal Entry filed on August 23, 2004, the trial court granted the parties a divorce on grounds of incompatibility. The trial court, in its entry, ordered that the parties' marital residence be sold at an absolute public auction within thirty (30) days of the date of the entry. The trial court further ordered that if the parties could not agree on an auctioneer, the marital property would be listed with Kenny Love. The trial court, in its August 24, 2004, Journal Entry, also granted appellee the right to reside in the marital residence until it was sold and ordered appellee to pay all utilities, homeowners' insurance, and mortgage payments until the sale. Finally, the trial court, in its entry, stated, in relevant part, as follows:
 {¶ 7} "Upon sale of the residence the proceeds shall be applied as follows:
 {¶ 8} "1) reasonable, customary and usual costs of auction;
 {¶ 9} "2) the First and Second Mortgages;
 {¶ 10} "3) real estate tax liens;
 {¶ 11} "4) husband to receive the first $340.59 of net profit representing his separate property interest; and
 {¶ 12} "5) the parties to divide any net proceeds equally."
 {¶ 13} Appellee appealed from the trial court's August 23, 2004, Journal Entry, challenging the trial court's property division in terms of the marital residence. Pursuant to an Opinion filed on November 7, 2005, in Tilmant v. Tilmant, Knox App. No. 2004CA000024, 2005-Ohio-5939, this Court affirmed the judgment of the trial court. *Page 4 
 {¶ 14} Thereafter, on April 13, 2005, appellant filed a "Motion to Compel the Court's Order to Auction the Marital Residence." Appellant, in her motion, argued, in relevant part, as follows:
 {¶ 15} "Plaintiff has had the sole benefit and use of the marital home since January 2002. During this time, the Plaintiff has refused to pay any property taxes and has accumulated a debt of nearly $20,000 in conjunction with this property. Because the Court did not make the Plaintiff solely responsible for the payment of property taxes while he has had sole benefit and use, the continuing accumulation of taxes is a hardship to the Defendant since the taxes are paid from the proceeds of the auction that was set for last year."
 {¶ 16} Appellant, in her motion, also asked that a new auctioneer be assigned who had no relationship with appellee or Oak Leaf Mortgage, where appellee is self-employed as a mortgage broker. In a memorandum in support of her motion filed on June 17, 2005, appellant noted that the Knox County Treasurer had filed a complaint of tax foreclosure on May 31, 2004, (Case No. 04TF030123), asking that the property be sold at Sheriffs sale.
 {¶ 17} The trial court, as memorialized in a Journal Entry filed on November 18, 2005, ordered that unless the parties submitted a notarized agreement to the court on or before December 2, 2005, demonstrating that they had chosen an auctioneer, the marital residence would be listed with Kenny Love and the auction would proceed. After the parties failed to respond, John Sperry was chosen to be the auctioneer.
 {¶ 18} On February 17, 2006, appellant filed a "Motion for New Auctioneer of the Marital Residence and Rightful Allocation of Proceeds and Debts." Appellant, in her *Page 5 
motion, indicated that John Sperry was not an "independent third party" because he was a friend and a business colleague of appellee's. Appellant also alleged that Sperry and appellee proceeded to schedule the auction for a date that she was scheduled to be out of town, that Sperry failed to notify her of the date and time of the open house, prior to the auction, and that Sperry failed to place signs advertising the same along the main road the week prior to the open house. According to appellant, "[t]his ongoing subversion indicates collusion and a bias toward the Plaintiff."
 {¶ 19} In her February 17, 2006, motion, appellant also stated as follows:
 {¶ 20} "The Defendant also asks the Court to order the full disclosure of all loan pay-offs, taxes, and other financial items as they relate to the auction; that all delinquent monthly payments on all loans secured by the real estate are the sole responsibility of the Plaintiff; and that all unpaid property taxes from the time the Plaintiff took sole possession of the property on January 25, 2002, be the sole responsibility of the Plaintiff (the Knox County Treasurer filed a complaint of Tax Foreclosure on March 31, 2004, asking that the property be sold at Sheriff auction). The Plaintiffs effort to force the Defendant to pay his debts by refusing to comply with the general upkeep of the residence is reprehensible and should not be rewarded."
 {¶ 21} On February 25, 2006, appellee purchased the subject property at the auction for $342,000.00. The trial court, in its March 10, 2006 Confirmation of Sale, ordered as follows:
 {¶ 22} "Upon timely completion of the payment of proceeds for the purchase of the property via closing to be held on or before March 27, 2006, the proceeds of sale shall be applied as follows: *Page 6 
 {¶ 23} "1. The costs of this action, including the auctioneer's fees and expenses.
 {¶ 24} "2. Delinquent and current real estate taxes and assessments prorated to the date of sale.
 {¶ 25} "3. The costs of Case No. 04TF030123.
 {¶ 26} "4. The amounts due Defendant, First Knox National Bank, on its note and mortgage on the property.
 {¶ 27} "5. The amounts due Defendant, Fifth Third Bank, Central Ohio, on its note and mortgage on the property.
 {¶ 28} "6. The amounts due Defendant, Ohio Department of Job and Family Services, on its liens, if any.
 {¶ 29} "7. Any sums remaining shall be distributed as set forth in this Court's Entry of August 23, 2004, in this action."
 {¶ 30} It is from the trial court's March 10, 2006, Confirmation of Sale that appellant now appeals, raising the following assignments of error:
 {¶ 31} "I. THE TRIAL COURT EXERCISED AN ABUSE OF DISCRETION BY ALLOWING THE AUCTION OF THE MARITAL RESIDENCE TO BE IMPROPERLY CONDUCTED BY AN AUCTIONEER NOT DESIGNATED BY THE COURT AND REFUSING TO ENTERTAIN THE APPELLANT'S MOTIONS REGARDING THESE MATTERS PRIOR TO THE AUCTION.
 {¶ 32} "II. THE TRIAL COURT EXERCISED AN ABUSE OF DISCRETION BY REFUSING TO DISCLOSE INFORMATION REGARDING THE SALE OF MARITAL PROPERTY. *Page 7 
 {¶ 33} "III. THE TRIAL COURT EXERCISED AN ABUSE OF DISCRETION BY MANDATING THE PAYMENT OF DEBTS, BUT FAILING TO DISPOSE OF CLAIMS IN RELATION TO THE ORDERS OF THE COURT BY OMITTING THE MANDATE THAT FUNDS DUE THE APPELLANT BY THE APPELLEE BE PAID FROM VIABLE FUNDS PLACED IN ESCROW BY THE APPELLEE OR UPON THE RECEIPT OF APPELLEE'S EQUITABLE SHARE OF PROCEEDS FROM THE SALE OF THE MARITAL PROPERTY.
 {¶ 34} "IV. THE TRIAL COURT EXERCISED AN ABUSE OF DISCRETION BY ORDERING APPELLEE'S SEPARATE DEBT OF ARREARAGES IN COURT-ORDERED SUPPORT DUE THE APPELLANT BE PAID FROM THE APPELLANT'S EQUITABLE SHARE OF THE PROCEEDS FROM THE SALE OF THE MARITAL PROPERTY.
 {¶ 35} "V. THE TRIAL COURT EXERCISED AN ABUSE OF DISCRETION BY NOT MANDATING THAT ALL LATE MONTHLY PAYMENTS, PMI, AND PENALTY FEES ARE THE SEPARATE RESPONSIBILITY OF THE APPELLEE AND SHOULD NOT BE PAID FROM APPELLANT'S EQUITABLE SHARE OF THE PROCEEDS FROM THE SALE OF THE MARITAL PROPERTY.
 {¶ 36} "VI. THE TRIAL COURT EXERCISED AN ABUSE OF DISCRETION BY ORDERING APPELLEE'S SEPARATE DEBT OWED TO FIFTH THIRD BANK BE PAID FROM APPELLANT'S EQUITABLE SHARE OF THE PROCEEDS FROM THE SALE OF THE MARITAL PROPERTY.
 {¶ 37} "VII. THE TRIAL COURT EXERCISED AN ABUSE OF DISCRETION BY ORDERING APPELLEE'S SEPARATE DEBT OF TAXES, PENALTIES, AND *Page 8 
FORECLOSURE COSTS BE PAID FROM APPELLANT'S EQUITABLE SHARE OF THE PROCEEDS FROM THE SALE OF THE MARITAL PROPERTY."
 I {¶ 38} Appellant, in her first assignment of error, argues that the trial court erred by not granting her request for a different auctioneer to be appointed to conduct the auction of the marital residence. Appellant specifically argues that John Sperry, the auctioneer who conducted the auction, was not designated by the trial court and that Sperry had a conflict of interest because he was a friend and colleague of appellee. Appellant also argues that the trial court did not respond to her April 13, 2005, "Motion to Compel the Court's Order to Auction the Marital Residence."
 {¶ 39} Contrary to appellant's assertion, the trial court, in its August 23, 2004, Journal Entry, did not require that the property be auctioned by Kenny Love. Rather, the trial court, in its November 18, 2005, Journal Entry, ordered that the marital residence would belisted with Kenny Love if the parties could not agree on an auctioneer. There was no requirement in the court's entry that Love personally conduct the auction.
 {¶ 40} Appellant further argues that the trial court should have appointed a different auctioneer than John Sperry because Sperry did not respond to her inquiries and because Sperry was biased. However, there is no evidence in the record that appellant made any inquiries concerning the auction or that Sperry did not respond to the same. In addition, as stated by the trial court in its Confirmation of Sale, John Sperry, the auctioneer, was specifically instructed to report to the trial court and did so. Moreover, other than appellant's unsupported assertions, there is no evidence that Sperry was a friend or colleague of appellee. Appellant did not attach any affidavits or *Page 9 
other evidence in support of her assertions that Sperry was biased. While appellant argues that the trial court did not respond to her April 13, 2005, "Motion to Compel the court's order to Auction the Marital Residence," we disagree. The trial court, it its November 18, 2005, Journal Entry, ordered that, unless the parties chose an auctioneer on or before December 2, 2005, the marital residence would be listed with Kenny Love and the auction would proceed. Thus, the trial court did respond to appellant's motion.
 {¶ 41} Finally, this Court notes that appellant has failed to demonstrate how she was prejudiced by Sperry's handling of the auction. We note that appellant does not argue that the auction price was too low, nor did she present evidence to the trial court indicating the auction price was too low.
 {¶ 42} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 43} Appellant, in her second assignment of error, argues that the trial court erred, in the Confirmation of Sale, by failing to disclose information to her regarding the sale of the marital property.
 {¶ 44} The trial court, in the March 10, 2006, Confirmation of Sale, disclosed that the subject property had been sold to appellee for $342,000.00 and that appellee had deposited in an escrow account $34,200.00 which was to be applied toward the purchase price. We concur with appellee that there is no requirement that a trial court submit findings of fact in a Confirmation of Sale Journal Entry.
 {¶ 45} Appellant's second assignment of error is, therefore, overruled. *Page 10 
 III {¶ 46} Appellant, in her third assignment of error, argues that the trial court erred by not mandating that the funds which appellee owed to her should be paid from the $34,200.00 which appellee deposited in escrow after purchasing the property at the auction or upon appellee's receipt of his share of the auction proceeds.
 {¶ 47} The trial court, in its August 23, 2004, Journal Entry, ordered appellee to pay to appellant "the sum of $23,462.97 within sixty days of the date of this entry as and for a property division. This amount represents her property interest in the East High Street and Minerva properties." Appellant, on April 13, 2005, filed a Motion for Contempt with the trial court, arguing that appellee was in "willful violation" of the trial court's August 23, 2004, Journal Entry and asked that appellee be ordered to immediately comply with the same.
 {¶ 48} Upon our review of the record, it is clear that the trial court has not ruled on appellant's Motion for Contempt. In short, there is no finding by the trial court that appellee did not pay the $23,462.97 to appellant. Moreover, we note that appellant never requested in her April 13, 2005, Motion for Contempt that the money due to her from appellee be paid upon appellee's receipt of his share of the auction proceeds. Rather, in her June 17, 2005, memorandum in support of her Motion for Contempt, appellant indicated to the trial court that appellee had a significant amount of stock as well as income from his mortgage business and thus had the ability to pay the money owed to her.
 {¶ 49} Appellant's third assignment of error is, therefore, overruled. *Page 11 
 IV {¶ 50} Appellant, in her fourth assignment of error, argues that the trial court erred, in its Confirmation of Sale, by ordering that the amounts due to the Ohio Department of Job and Family Services on its liens, "if any", be paid out of the auction proceeds. Appellant specifically argues that such debt is the sole responsibility of appellee and should not be taken from her share of the auction proceeds.
 {¶ 51} The trial court, in its August 23, 2004, Journal Entry, found appellee in contempt for failing to pay spousal and child support. In its Findings of Fact filed on the same day, the trial court indicated that "the certified records of the KCCSEA [Knox County Child Support Enforcement Agency] demonstrate an arrearage in spousal support of $7,299.77 as of March 31, 2004 . . . the child support records also reflect an arrears in child support of $930.65."
 {¶ 52} On April 13, 2005, appellant filed a motion alleging that appellee had failed to comply with the trial court's order, in its August 23, 2004, Journal Entry, which ordered the appellee to pay the arrearages in spousal support within forty-five days of such order. The trial court has yet to rule on such motion. Thus, it is unclear whether or not appellee owes any money to the Ohio Department of Job and Family Services and whether the same, in fact, has a lien.
 {¶ 53} If there is a lien against the real estate, the trial court did not err in ordering that lien to be paid from the proceeds so that the title to the property would be unencumbered.
 {¶ 54} However, we concur with appellant that such debt, if any, is appellee's. And if the debt is paid from the proceeds from the sale of the house, prior to proceeds *Page 12 
being divided between the parties, that debt will have been paid from proceeds which belonged to both parties and not just to the appellee. Therefore, upon proper motion to the trial court, the appellant would be entitled to reimbursement from appellee to make appellant whole regarding this debt.
 {¶ 55} Appellant's fourth assignment of error is, therefore, overruled.
 V {¶ 56} Appellant, in her fifth assignment of error, argues that the trial court erred by not ordering, in the Confirmation of Sale, that all late monthly payments, PMI [mortgage insurance] and penalty fees are appellee's separate responsibility and should be paid from appellee's share of proceeds from the auction of the marital home.
 {¶ 57} As is stated above, the trial court, in its August 23, 2004, Journal Entry, granted appellee the right to reside in the marital residence until it was sold and ordered appellee to pay all utilities, homeowners' insurance, and mortgage payments until the property was sold at auction. While appellee argues that the payment of all late monthly payments, PMI and penalty fees are appellee's separate responsibility and should be taken from appellee's share of the property, the record is devoid of evidence that there were any delinquent monthly payments, PMI or late fees on the mortgage.
 {¶ 58} Upon proper motion to the trial court, appellee may be found to be in contempt of court for not paying these items. If so, appellant would then be entitled to be reimbursed to the extent appellee's debt was paid from joint proceeds.
 {¶ 59} For such reason, appellant's fifth assignment of error is overruled. *Page 13 
 VI {¶ 60} Appellant, in her sixth assignment of error, argues that the trial court erred by ordering appellee's separate debt owed to Fifth Third Bank to be paid from of the proceeds from the auction of the marital residence.
 {¶ 61} The trial court, in its August 23, 2004, Findings of Fact, found that Fifth Third Bank had a second mortgage on the marital residence and that the same was a marital debt. Appellant now argues that her name does not appear on the second mortgage held by Fifth Third Bank and that, therefore, the amount due to Fifth Third "should be taken from the Appellee's share of the proceeds after the division of the proceeds of the sale of the property, rather than from the Appellant's share of proceeds."
 {¶ 62} However, in its August 23, 2004, Journal Entry, the trial court specifically ordered that the second mortgage be paid from the proceeds of the auction before any net proceeds were divided between the parties. Appellant did not appeal from such entry, which was a final appealable order. Failure to file a timely appeal of a final, appealable order constitutes a waiver of the right to appeal any errors contained within the order. In re Appropriation for Juv. Probate Div. for 1979 (1980),62 Ohio St.2d 99, 403 N.E.2d 974.
 {¶ 63} Appellant's sixth assignment of error is, therefore, overruled.
 VII {¶ 64} Appellant, in her seventh and final assignment of error, argues that the trial court erred by ordering appellee's separate property debt of taxes, penalties and foreclosure costs to be paid from her equitable share of the auction proceeds. *Page 14 
 {¶ 65} The trial court, in its August 23, 2004, Journal Entry, granted appellee the right to reside in the marital residence until it was sold and ordered appellee to pay all utilities, homeowners' insurance, and mortgage payments until the property was sold. Appellant notes that, during the years the case was pending, appellee resided in the marital residence but paid no property taxes on the same, resulting in a tax debt of $20,000.00. Appellant now argues that she should not be responsible for such debt and that it should not be paid from her share of the auction proceeds.
 {¶ 66} However, the trial court, in such entry, did not order appellee to pay the real estate taxes. Appellant was only ordered to pay the mortgage, homeowners' insurance and utilities. The trial court, in its August 23, 2004, Journal Entry further ordered that real estate tax liens would be paid from the auction proceeds before any net proceeds were divided between the parties. Appellant did not appeal from such entry, which was a final appealable order. Failure to file a timely appeal of a final, appealable order constitutes a waiver of the right to appeal any errors contained within the order. In re Appropriation forJuv. Probate Div. for 1979 (1980), 62 Ohio St.2d 99, 403 N.E.2d 974.
 {¶ 67} While it can be argued that the trial court made its final orders assuming that the real estate would be sold at auction within thirty days of the entry, instead of within a year and a half of the entry, the fact is that, at this point in time, there is no order addressing which party should have paid the real estate taxes.
 {¶ 68} Appellant also notes that the trial court, in the Confirmation of Sale, ordered that the costs of Case No. 04TF030123, the tax foreclosure case filed by the Knox County Treasurer, be paid out of the auction proceeds. Appellant argues that the *Page 15 
trial court did not order that such costs be paid in its August 23, 2004, Journal Entry. According to appellant, "the new provision in the Court's "Confirmation of Sale" of March 10, 2006, regarding costs associated with Case No. 04TF030123 (JM #44), which is the tax foreclosure filing against the Appellee, is solely the responsibility of the Appellee. The Appellant is not named in this case nor has been notified or party to any of its action. Therefore, payment of costs associated with Case No. 04TF030123 should be taken from the Appellee's share of the proceeds after the equal division of the proceeds of the sale of the property, rather than from the Appellant's share of proceeds; and the Court's "Confirmation of Sale" of March 10, 2006, should be reversed and an order by the Appellate Court substituted to reflect such provision."
 {¶ 69} However, as is stated above, appellee was never ordered to pay the property taxes on the subject property. The taxes, therefore, remained a joint debt.
 {¶ 70} Appellant's seventh assignment of error is, therefore, overruled.
 {¶ 71} Accordingly, the judgment of the Knox County Court of Common Pleas, Domestic Relations Division is affirmed.
 Edwards, J., Wise, P.J. and Delaney, J. concur *Page 16 
 JUDGEMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas, Domestic Relations Division is affirmed. Costs assessed to appellant. *Page 1